*683 OPINION OF THE COURT
Sidney Leviss, J.
In these CPLR article 78 proceedings petitioners Hyde Park Associates (hereinafter HPA) and Hyde Park Owners Corp. (hereinafter HPOC) seek a judgment vacating the March 9, 1990 order of respondents Commissioner Richard Higgins and the New York State Division of Housing and Community Renewal (hereinafter Commissioner and DHCR) which ordered a rent reduction and rent freeze for the period of February 1, 1984 to September 1, 1989 during which time there was a reduction in essential services.
This court, in an order dated March 29, 1990, granted petitioners’ request for a temporary restraining order staying enforcement of the DHCR’s order of March 9,1990.
HPA is the landlord of the rent-stabilized tenants who reside at a garden apartment complex known as Hyde Park Gardens. HPOC is the owner of a cooperative located at Hyde Park Gardens. HPA was the sponsor of the cooperative, is a majority shareholder of HPOC, and pays maintenance to HPOC. The rent-stabilized tenants, however, only pay rent to HPA.
The DHCR in an order dated February 11, 1986 determined that HPA had reduced essential services at Hyde Park Gardens, but declined to order a rent reduction. That portion of the Commissioner’s order which found a reduction of essential services was affirmed by this court in Matter of Hyde Park Assocs. v New York State Div. of Hous. & Community Renewal (Lonschein, J.) and by the Appellate Division, Second Department (140 AD2d 351, lv denied 72 NY2d 809). This court, in Matter of Tenants of Hyde Park Gardens v State of New York, Div. of Hous. & Community Renewal, Off. of Rent Admin. (Lonschein, J.), held that upon the finding of a reduction of essential services, the DHCR was required, as a matter of law, to order a rent reduction, under section 26-514 of the Administrative Code of the City of New York. (Commonly known as the Rent Stabilization Law.) This court’s decision was upheld by the Appellate Division, Second Department, on May 2, 1988 (140 AD2d 351, supra) and the Court of Appeals on April 27, 1989 (73 NY2d 998). The matter was remanded to the DHCR for the sole purpose of determining the amount of the rent reduction. The landlord restored the security services at Hyde Park Gardens on September 1,1989.
The DHCR, in an order issued on March 9, 1990, modified *684 its prior order of February 11, 1986, and reduced the rent in accordance with the formula set forth in section 26-514 of the Rent Stabilization Law. The Commissioner, upon a review of the evidence, found that there was no basis "to order an extended payback period or to vary the Division’s standard refund directive in any other respect” and directed that those tenants who had joined the complaint of a decrease in building wide services, would have their rents reduced to the level in effect prior to the last rent guideline increase commencing before the effective date of the rent reduction. This rent reduction was for the period of February 1, 1984, the date of the tenants’ complaint, to August 31, 1989. In addition, as the housing complex had been the subject of various major capital improvement (MCI) increases over the years, the owner was barred from applying for or collecting rent increases for MCIs from all tenants in the complex for the period that the owner failed to maintain essential services. The Commissioner directed the owner to refund to the tenants all amounts collected in excess of the reduced rent attributable to guidelines or the MCI increases. The Commissioner also directed the restoration of the rents as of September 1, 1989, the date the owner had restored the services in question.
Petitioners now seek to vacate the DHCR’s order of March 9, 1990 and assert that as they acted in good faith, the penalty of a rent reduction estimated to be over $750,000 is excessive and so disproportionate to the offense as to render section 26-514 of the Rent Stabilization Law unconstitutional as applied to them under the 8th, 5th and 14th Amendments of the US Constitution, and article I, §§ 5 and 6 of the NY Constitution.
Respondents Commissioner and DHCR, in opposition, assert that the statutory sanctions imposed under section 26-514 of the Rent Stabilization Law are not excessive, or disproportionate to the wrong, are reasonably related to the statutory purpose, and are constitutional as applied. Respondents further assert that the 8th Amendment is inapplicable, as the rent reduction, while serving governmental purposes in protecting tenants, is neither a fine nor a penalty and is payable only to the tenants and not the government. It is further asserted that the rent reduction formula has not been challenged by petitioners, and is neither "wholly disproportionate” nor "grossly excessive” so as to violate due process. Rather, respondents assert that petitioners only complain as to the amount of the rent reduction, which they could have minimized by restoring the required services prior to September 1, *685 1989. Finally, respondents assert that petitioners’ good faith may not be taken into consideration in fixing the amount of the rent reduction, as the sanction imposed is nondiscretionary and fixed by statute.
It is well settled that an article 78 proceeding is the proper method for determining whether a statute in a specific instance has been applied in an unconstitutional manner. An article 78 proceeding, however, is not the proper method of testing the general constitutionality of a statute (Matter of R & G Outfitters v Bouchard, 101 AD2d 642). Petitioners herein do not challenge the general constitutionality of section 26-514 of the Rent Stabilization Law. Rather, petitioners assert that section 26-514 was applied to them by the DHCR in an unconstitutional manner. Petitioners assert that the DHCR’s order reducing and freezing the rent for the period in question resulted in the imposition of a penalty estimated at $762,814.16 and as such is so large and disproportionate to the offense that it violates their due process rights. Petitioners argue that the penalty imposed upon them is unconstitutionally excessive because they acted in good faith to improve services. Petitioners further argue that the penalty is unconstitutionally excessive because the tenants suffered little or no actual injury. Finally, petitioners argue that the penalty imposed is unconstitutional because it has no relation to the statute’s purpose.
It is well established that a civil penalty violates due process when it is "grossly excessive” or "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.” (St. Louis, Iron Mountain & S. Ry. Co. v Williams, 251 US 63, 67; Browning-Ferris Indus, v Kelco Disposal, 492 US 257.)
The DHCR, upon a finding of a reduction in essential services, is mandated by section 26-514 of the Rent Stabilization Law to reduce the tenants’ rent to the guidelines level in effect in the tenants’ prior lease, and to prohibit any further rent increases until such time as the services have been restored. The DHCR has no discretion in ordering such a rent reduction, and must follow the statutory formula for determining the amount of the rent reduction. (Matter of Tenants of Hyde Park Gardens v State of New York, Div. of Hous. & Community Renewal, Off. of Rent Admin., 140 AD2d 351, affd 73 NY2d 998, supra.) Petitioners do not claim that a rent reduction pursuant to this formula, or a rent freeze itself is excessive.
*686 The court finds that the rent reductions ordered by the DHCR are neither "grossly excessive” nor "wholly disproportionate” to the offense so as to be unreasonable and unconstitutional. The rent reductions mandated by section 26-514 upon a finding of reduction in essential services are payable or credited to each individual tenant. The amount in question is large only because the reduction in essential services lasted for a period of 5 years and 7 months, and affected a total estimated 602 tenants who reside in the complex. According to petitioners’ calculations, the 209 tenants who joined in the decrease in services complaint will receive a refund of $609,929.73, and the 393 noncomplaining tenants will receive a total refund of $152,884.94 based solely on MCI increases. Thus, on an average, each complaining tenant will receive a refund of $2,918.32, which is equal to $43.55 per month or $522.68 per year for the entire 67-month period. The noncomplaining tenants, on an average, will receive a refund of $389.02, which is equal to $5.81 per month or $69.68 per year for the entire 67-month period. These refunds, per tenant, are clearly not excessive. Moreover, the Legislature, in fashioning a remedy to compensate tenants for the reduction in essential services, was not required to limit the sanction to the actual damages sustained by the tenants. (See, St. Louis, Iron Mountain & S. Ry. Co. v Williams, 251 US 63, supra.) Petitioners may not relitigate the issue of reduction in essential services under the guise of a constitutional attack on the DHCR’s order of March 9, 1990. In addition, petitioners may not reargue the issue of good faith. The rent reduction mandated by section 26-514 is nondiscretionary, and therefore the landlord’s good faith may not be considered in calculating the amount of the rent reduction. The fact that this statutory provision is nondiscretionary does not render its application unconstitutional. Moreover, the issue of petitioners’ good faith was argued by the DHCR before the Court of Appeals and implicitly rejected in Matter of Tenants of Hyde Park Gardens v State of New York, Div. of Hous. & Community Renewal, Off. of Rent Admin. (140 AD2d 351, affd 73 NY2d 998, supra).
Finally, the sanctions of a rent refund and rent freeze mandated by section 26-514 of the Rent Stabilization Law, and ordered by the DHCR, are clearly and reasonably related to the statutory goal of compelling a landlord to restore services, and affording tenants a measure of compensation for the period that these services were not provided. In addition, these sanctions serve the governmental interest in the preser *687 vation and maintenance of the rental housing stock in New York City. (Administrative Code §26-501.) It is clear that it was only the imminent imposition of a rent reduction and rent freeze which compelled petitioners to restore the security services on September 1, 1989. Petitioners took no steps to restore these services prior to the Court of Appeals decision. Petitioners, however, were not parties to that litigation, and their appeals of the essential services issue ended on October 18, 1988 when the Court of Appeals denied leave to appeal from the Appellate Division’s determination. (Matter of Hyde Park Assocs. v New York State Div. of Hous. & Community Renewal, 140 AD2d 351, lv denied 72 NY2d 809, supra.) Petitioners thus could have restored essential services after October 18, 1988, without forfeiting any right to appeal, and could have reduced the period of the rent refunds by nearly a year. Contrary to petitioners’ assertions, they did not have to await an order of a rent reduction, in order to restore essential services, and the DHCR could not have extended the refund beyond the date the essential services were restored. (See, Administrative Code § 26-514.)
Accordingly, the court finds that section 26-514 of the Rent Stabilization Law was constitutional as applied to the petitioners and that the rent refund ordered by the DHCR on March 9, 1990 was not "excessive” nor "wholly disproportionate” and therefore the petition is dismissed.
[Portions of opinion omitted for purposes of publication.]